J-S16025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DEMETRICE HERRON | : | |
| | : | |
| Appellant | : | No. 1490 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 1, 2021,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0000018-2020.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:      **FILED: JULY 5, 2022**

Demetrice Herron appeals from the judgment of sentence imposed following his conviction for sexual assault.  We affirm the conviction; however, we vacate the judgment of sentence and remand for resentencing.

## I.      Procedural and Factual History

On October 19, 2018, Susquehanna Township Police Detective Scott Meier charged Herron with rape and sexual assault.  Both counts were held for court following a preliminary hearing on December 26, 2019.

On March 1, 2021, Herron moved to allow admission of evidence of the complainant's subsequent sexual conduct at trial.  Specifically, Herron moved to introduce the complainant's statements that the day after the incident with

_____

[*] Retired Senior Judge assigned to the Superior Court.

Herron, she had consensual sexual intercourse with her boyfriend. Immediately prior to trial, the trial court heard and denied this motion.

The case proceeded to a jury trial on March 8 and 9, 2021. The trial court summarized the evidence at trial:

> On the evening of October 19, 2018, Abigail J[.] ([A.J.]) arrived at River Drive Service Center to retrieve personal belongings from her previously totaled vehicle. [A.J.] entered the establishment to speak with an employee at the front desk. When she entered, [Herron] said, "Damn." [A.J.] did not respond and left the area to retrieve her belongings. [A.J.] drove her rental vehicle through the gates into an empty lot where her totaled vehicle was. As [A.J.] began to clean out her totaled vehicle, she noticed an individual walking towards her. She initially believed this individual was there to help her remove the license plate from her totaled vehicle. The individual, [Herron], kept walking towards her even as she walked around the vehicle to create space between them. He began to ask her derogatory questions that she ignored. [Herron] commented on her outfit and asked her if she had "ever f[—]ed a black person." When [A.J.] located her cellular phone, [Herron] asked her for her phone number. [A.J.] gave him her phone number because she thought "that would get the person to leave me alone and just block the number." [A.J.] eventually asked [Herron] to leave her alone and [said] that someone was coming with a screwdriver to help her out.
>
> As [A.J.] continued moving things out of the driver's side, she felt [Herron] approach her from behind. [Herron] pushed her from behind into the backseat of the vehicle. [A.J.] stated that [Herron] placed his penis inside her vagina. [A.J.] asked him to stop, but [Herron] did not stop. [A.J.] described that she froze and did not know what to do. [A.J.] stated that she did not want to engage in sexual intercourse with [Herron] and felt that she had no choice. [Herron] stopped sexually assaulting [A.J.] when an employee started to come through the gate. [Herron] stated to [A.J.] that he was not done with her yet, then left the area.
>
> [A.J.] left most of her belongings in the totaled vehicle and left the establishment. [A.J.] called her mother and drove home. [A.J.] went to the hospital on October 22, 2018, and had a rape kit completed by a forensic nurse. Forensic nurse Eileen Aiossa

(hereinafter, "Ms. Aiossa") began her interview of [A.J.] at 5:40 p.m. [A.J.] consented to having evidence collected and saved. [A.J.] explained to Ms. Aiossa that she had been assaulted on October 19, 2018, at the River Drive Service Center while she was gathering her belongings. She further explained that [Herron] followed her out into the junkyard, that she thought he was an employee bringing the screwdriver, that he asked her if she had ever "f[—]ed a black guy," and that he became aggressive while asking her questions. She then explained that [Herron] pushed her from behind into the car seat and began to assault her.

[A.J.'s] documented injuries include a four centimeter linear scratch on her left leg, a four by three centimeter red-purple bruise and a two centimeter purple bruise on her left leg, and a three centimeter by four centimeter purple bruise on her right knee. Ms. Aiossa explained that the lack of injury to the external and internal genitalia is not uncommon in these situations. Vaginal and buccal swabs were taken. All evidence taken during the exam was sealed, labeled, and locked into storage.

On January 16, 2019, [A.J.] went to the police station and spoke with officers about the incident. Scott Meier (hereinafter, "Detective Meier"), a detective with the Susquehanna Township Police, conducted the initial interview of [A.J.] Detective Meier went to the River Drive Service Center to obtain any possible video footage of the incident. There was not any video footage saved from the day of the incident.

Although [A.J.] had [Herron's] number blocked, she received multiple voice messages from [Herron]. [A.J.] shared these voice messages with the police. [A.J.] received three additional calls from [Herron] while he was in jail. [Herron] used another inmate's PIN [] to make these calls. In one of the voice messages, [Herron] states [A.J.'s] first name and that he apologizes. As [A.J.] had been receiving messages and phone calls from [Herron], police attempted, unsuccessfully, to obtain her phone records. Police were able to obtain [Herron's] phone records that showed several calls to [A.J.] Detective Meier was able to match the phone number from which [A.J.] received the calls from [Herron] to [Herron's] name and location in North Carolina. With that information, Detective Meier was able to make a photographic lineup. Police then contacted [A.J.] to show her a photo array on January 18, 2019. [A.J.] identified [Herron] through the photo array. She then attempted to contact him via

phone while at the police station. She was not able to contact him.

Michael Melendez (hereinafter, "Detective Melendez"), a police detective in Charlotte, North Carolina, was contacted by Susquehanna Township Police Department regarding a sexual assault case in Harrisburg, Pennsylvania that potentially involved a suspect that resided in his jurisdiction, [Herron]. Detective Melendez was contacted in hopes that he could obtain a DNA sample from [Herron]. Detective Melendez met with [Herron] on April 24, 2019, and obtained a buccal swab. [Herron] asked Detective Melendez if the reason for obtaining the buccal swab was a woman named "Abby."

Brett Albert, a forensic scientist specializing in serology at the Pennsylvania State Police Harrisburg Regional Laboratory, analyzed the evidence collected in this case. He determined that no seminal fluid was identified on the vaginal sample. He then confirmed that there were sperm cells present on a pair of shorts that [A.J.] had been wearing at the time of the assault. The sample was prepared for DNA analysis.

Patrice Ferlan, a forensic DNA scientist with the Pennsylvania State Police Forensic DNA Division, analyzed the samples for DNA. The DNA sample taken from the pair of shorts [A.J.] had been wearing during the assault matched the sample taken from [Herron].

[Herron] testified that he walked up behind [A.J.] as she was bent over gathering her belongings from her vehicle. After propositioning her, [Herron] then pressed his body against her and started rubbing her over her shorts. [Herron] then stated that [A.J.] began to grind her hips against him. [Herron] testified that he and [A.J.] engaged in consensual sexual intercourse. [Herron] obtained [A.J.'s] phone number and they both left the area. [Herron] then claims that he apologized on [A.J.'s] voicemail because his girlfriend called [A.J.] [Herron] used his girlfriend's phone to call [A.J.] and apologize to her.

Trial Court Opinion, 1/11/22, at 2−6 (record citations omitted).

The jury found Herron not guilty of rape and guilty of sexual assault. Herron and his trial counsel moved for trial counsel's withdrawal; following a hearing, the trial court appointed conflicts counsel for sentencing.

On September 1, 2021, the trial court sentenced Herron to serve 10 to 20 years' imprisonment, pay a fine of $50 plus costs, undergo a sex offender treatment program, and have no contact with the victim.

Herron filed a post-sentence motion on September 10, 2021, and the Commonwealth responded on October 6, 2021. The trial court denied Herron's post-sentence motion on October 13, 2021. The trial court appointed appellate counsel on October 29, 2021. Herron timely appealed; Herron and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

## II.    Analysis

Herron presents the following issues for our review:

A. Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence to prove non-consensual sexual intercourse?

B. Whether the trial court erred in accepting the jury's verdict which was contrary to the weight of the evidence presented at trial, which supported consensual sexual intercourse?

C. Whether the trial court erred [in] denying [Herron's] motion to pierce [the] Rape Shield where the evidence was being introduced to prove complainant's state of mind and attack her credibility?

D. Whether the trial court erred in sentencing [Herron] as a second strike where the Commonwealth failed to prove [Herron's] prior out of state burglary conviction was a qualifying crime of violence?

Herron's Brief at 4 (reordered for ease of disposition).

### A. Sufficiency of the Evidence

Herron claims that the evidence was insufficient to convict him of sexual assault. Herron's Brief at 23–24. We review a challenge to the sufficiency of the evidence under a well-established standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Rudolf*, 262 A.3d 574, 578–79 (Pa. Super. 2021) (quoting *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014)).

The jury found Herron guilty of sexual assault, which is committed when a "person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. Under this statute, the Commonwealth must prove that the complainant did

not consent.[1]  ***Commonwealth v. Prince***, 719 A.2d 1086, 1090 (Pa. Super. 1998).   It is well-established that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." ***Commonwealth v. Cramer***, 195 A.3d 594, 602 (Pa. Super. 2018) (citing ***Commonwealth v. Castelhun***, 889 A.2d 1228, 1232 (Pa. Super. 2005)); ***accord*** 18 Pa.C.S.A. § 3106 ("The testimony of a complainant need not be corroborated in prosecutions under this chapter.").

Herron alleges that the Commonwealth's evidence was insufficient to prove that the sexual intercourse was not consensual.   He directs us to numerous alleged deficiencies in the Commonwealth's case.   However, the complainant testified that Herron pushed her into her car, she told him to stop, and he put his penis into her vagina.   N.T., Trial, 3/8/21, at 37–38.   She testified that she did not want to engage in sexual intercourse.  ***Id.*** at 51–52. Under our laws, this testimony alone is sufficient.  ***Cramer***, ***supra***.  Therefore, the trial court did not err in accepting the jury's verdict.

---

[1] Trial counsel did not request an instruction on consent.  The trial court did instruct the jury as to the elements of sexual assault, including lack of consent. N.T., Trial, 3/9/21, at 281.  The jury submitted a question—"can sexual assault occur with consent?"—and the court answered that it cannot.  ***Id.*** at 286.  The court later instructed: "The burden is on the Commonwealth to prove beyond a reasonable doubt that the alleged victim did not give consent."  ***Id.*** at 288.

## B. Weight of the Evidence

Herron claims that the jury's verdict was against the weight of the evidence, arguing that the evidence presented at trial weighed more towards consensual sexual intercourse than sexual assault. Herron's Brief at 25–26.

The trial court found that Herron waived this claim. We agree. By rule:

A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). Here, because Herron did not raise a challenge to the weight of the evidence before the trial court either in an oral or written motion for a new trial, he has waived this claim.[2] *Commonwealth v. Kinney*, 157 A.3d 968, 972 (Pa. Super. 2017), *appeal denied*, 170 A.3d 971 (table) (Pa. Aug. 7, 2017).

---

[2] After trial and before sentencing, Herron filed a document *pro se* including a claim that "[t]he weigh[t] of the evidence was insufficient to establish beyond a reasonable doubt that" he sexually assaulted the victim. He stated that there was no evidence of forcible compulsion and that the jury was not instructed that a mistake of fact of consent would be a defense. Motion for a Judgment of Acquittal, 8/4/21, at 4. The trial court denied the motion on the record. N.T., Sentencing, 9/1/21, at 7.

In assessing whether Herron waived his challenge to the weight of the evidence, we do not consider this document, which was not signed by Herron's attorney. *See Commonwealth v. Reid*, 642 A.2d 453, 462 (Pa. 1994) (not considering issues in a *pro se* brief based on Pennsylvania's rule against hybrid representation). Furthermore, the arguments on this page of Herron's *pro se* filing do not implicate the weight of the evidence.

## C. Rape Shield Law

Herron challenges the trial court's denial of his motion to introduce evidence to pierce the Rape Shield Law, 18 Pa.C.S.A. § 3104. Before trial, he moved to admit the complainant's statements that she had consensual sexual intercourse with her boyfriend the day after the incident with Herron. **See id.** § 3104(b). Herron maintained that this would show the complainant's state of mind during and after the incident.[3] Herron's Brief at 19 (arguing "that a woman who engaged in consensual sexual intercourse with a stranger would be more likely to immediately engage in sexual intercourse with her boyfriend than a woman who was sexually assaulted"). Immediately prior to trial, the trial court heard and denied Herron's motion. N.T. Trial, 3/8/21, at 4–8. The court found that this evidence was precluded by the Rape Shield Law and that its prejudicial impact "would far outweigh any probative value as it serves no purpose other than to shift the fact finder's focus from the culpability of the accused [] to the virtue or chastity of the victim." **Id.** at 7–8.

> This Court has established that a trial court's ruling on the admissibility of a sexual abuse victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of

---

[3] Pretrial, Herron also argued that sexual activity the day after an alleged rape is not "past sexual conduct" within the meaning of the statute. He does not repeat this argument on appeal. **See Commonwealth v. Rogers**, 250 A.3d 1209, 1219 (Pa. 2021) (holding that the Rape Shield Law extends to conduct after the alleged offense and before trial); **Commonwealth v. Jones**, 826 A.2d 900, 908 (Pa. Super. 2003) (*en banc*) (same).

partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused."

**Commonwealth v. Martz**, 232 A.3d 801, 816–17 (Pa. Super. 2020) (citing and quoting **Commonwealth v. K.S.F.**, 102 A.3d 480, 483 (Pa. Super. 2014)).

The Rape Shield Law provides that "[e]vidence of specific instances of the alleged victim's past sexual conduct . . . shall not be admissible in prosecutions of any offense listed in subsection (c)," including Chapter 31 offenses, with a statutory exception that does not apply here. 18 Pa.C.S.A. § 3104(a). Its purpose "is to prevent a sexual assault trial from degenerating into an attack upon the [alleged] victim's reputation for chastity." **Commonwealth v. Berkowitz**, 641 A.2d 1161, 1165 (Pa. 1994).

Herron points us to **Commonwealth v. Killen**, 680 A.2d 851 (Pa. 1996). In **Killen**, the defendant was accused of sexually assaulting a woman he had pulled over for speeding, who was then taken by ambulance to a hospital. **Id.** at 851–52. The defendant, alleging that the complainant fabricated the sexual assault, sought to introduce evidence of her "sexually provocative statements" and flirtatious behavior to men in the ambulance and hospital. **Id.** at 852–53. Our high court held that this was not in the class of evidence barred by the Rape Shield Law, as it showed "the complainant's state of mind shortly *after* (and by implication during) her alleged sexual assault." **Id.** at 854 (describing the statements as being "part of and relevant to the

ongoing episode in which the alleged criminal activity [took] place"). Because the evidence was relevant to a critical issue, it was error to exclude it. *Id.*

Courts have declined to extend the state-of-mind exception in *Killen* to allow evidence of a complainant's sexual conduct with others after the criminal episode is concluded. In *Commonwealth v. Jones*, 826 A.2d 900, 907–09 (Pa. Super. 2003) (*en banc*), we reversed a trial court's grant of a defendant's motion to admit evidence that the complainant was convicted of prostitution the month the defendant allegedly sexually assaulted her. "Whatever the motivation for the complainant's conduct might be, evidence of her sexual history with a man other than Appellee after the alleged rape is non-probative of her inclination to consent to such activity with Appellee on December 16, 1999—or at any other time." *Id.* at 909.

Likewise, in *Commonwealth v. Rogers*, 250 A.3d 1209 (Pa. 2021), the Supreme Court of Pennsylvania held that evidence that alleged rape victims were later convicted of prostitution involving other men was barred by the Rape Shield Law and not otherwise admissible to prove that they had consented to sexual intercourse with the defendant. *Id.* at 1221 (holding that the subsequent sexual acts "would cast aspersions upon the moral character of the complainants and do little to prove consent at the relevant time – even if the victims had engaged in prostitution on other occasions").

Here, Herron's proposed evidence was that the day after he had sexual intercourse with the alleged victim, she had consensual sexual intercourse with her boyfriend. Unlike in *Killen*, this sexual conduct happened the next

- 11 -

day and was not part of an ongoing episode. Like in **Jones** and **Rogers**, it does little to show whether she consented to the sexual activity that was subject to trial. As the Rape Shield Law prohibited precisely the evidence that Herron sought to admit, and the trial court determined that the evidence's prejudicial impact far outweighed its probative value, we cannot say that the trial court abused its discretion in denying Herron's motion.

### D. Legality of Sentence

Herron challenges his "second strike" minimum sentence under 42 Pa.C.S.A. § 9714. Herron's Brief at 20–23. He argues that his prior conviction from North Carolina for breaking and entering is not a "crime of violence" that requires a ten-year minimum sentence. Because this is a question of law, we review it *de novo*. **Commonwealth v. Johnson**, 241 A.3d 398, 405 (Pa. Super. 2020).

By statute:

Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S.A. § 9714(a)(1). The definition of "crime of violence" includes, *inter alia*, "sexual assault," "burglary as defined in 18 Pa.C.S.A. § 3502(a)(1) (relating to burglary)," "or an equivalent crime in another jurisdiction."

We have explained that

to determine whether a foreign offense qualifies as a prior "crime of violence" under § 9714, we consider "the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability." **Commonwealth v. Northrip**, 985 A.2d 734, 740 (Pa. 2009) (quoting **Commonwealth v. Shaw**, 744 A.2d 739, 743 (Pa. 2000) (internal quotation marks omitted)). "The focus is not on the facts underlying the conviction, but rather on the statute that triggered the conviction." **Id.** at 741. Additionally, underlying public policy behind the two criminal statutes is relevant to our analysis, though not controlling. **Commonwealth v. Ward**, 856 A.2d 1273, 1277 (Pa. Super. 2004). Importantly, "the offenses do not identically have to mirror each other, but must be substantially equivalent to invoke operation of 42 Pa.C.S. § 9714." **Id.**

**Johnson**, 241 A.3d at 405–06 (citation formatting altered).

Here, the North Carolina statute under which Herron had been convicted provides: "Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon." N.C. Gen. Stat. § 14-54(a).[4] Our task is to determine if this is "substantially equivalent" to a crime of violence listed under 42 Pa.C.S.A. § 9714(g).

Pennsylvania's burglary statute provides:

**(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1) (i)   enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;

---

[4] "[B]reaking and/or entering, which is a Class H felony, [] carries a maximum punishment of up to 39 months in prison." **State v. Lindsey**, 843 S.E.2d 322, 326 (N.C. Ct. App. 2020); **see** N.C. Gen. Stat. § 15A-1340.17 (prescribing punishment limits).

(ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

(3) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present; or

(4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

18 Pa.C.S.A. § 3502(a).

Importantly, Section 9714(g) limits the definition of burglary as a "crime of violence" to burglary as defined in Section 3502(a)(1), which requires a person to be present at the time of the burglary. The North Carolina statute under which Herron was convicted does not contain this requirement.[5] N.C. Gen. Stat. § 14-54(c) (defining "building" to include "uninhabited house").

The Commonwealth placed on the record at sentencing that a person was in the building that Herron entered in North Carolina. N.T., Sentencing, 9/1/21, at 4. However, we focus on the actual statute under which a defendant was convicted rather than the underlying facts. *Johnson*, 241 A.3d

_____

[5] In contrast, North Carolina defines first-degree burglary to require the building entered to be "actually occupied at the time of the offense." *State v. Singletary*, 472 S.E.2d 895, 899 (N.C. 1996); *see* N.C. Gen. Stat. § 14-51.

at 405 (quoting **Northrip**, 985 A.2d at 741).[6] Herron's prior North Carolina conviction was for a crime that did not require proof that another person was present; based on the statutory language, it was not a "crime of violence" under Section 9714(g). Therefore, Herron did not qualify for an enhanced sentence under Section 9714(a)(1). Accordingly, we vacate his sentence and remand for resentencing.

### III. Conclusion

Conviction affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:07/05/2022

_____

[6] A prior version of Section 9714(g) specifically listed "burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present," and our Supreme Court thus concluded "that with respect to all crimes except burglary, the focus is on the crime for which the defendant was convicted, not the factual scenario underlying that crime." **Northrip**, 985 A.2d at 741. The General Assembly later amended both statutes; now, Section 9714(g)'s definition of "crime of violence" specifies a subsection of the burglary statute. We thus conclude that **Northrip**'s general rule to focus on the crime rather than the factual scenario also applies in determining if a foreign statute is the equivalent of burglary as defined in Section 3502(a)(1).