J-S63035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEMONI LARON GHEE, | |
| Appellant | No. 347 MDA 2014 |

Appeal from the Judgment of Sentence September 18, 2013
in the Court of Common Pleas of Franklin County
Criminal Division at No.: CP-28-CR-0000065-2013

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 17, 2014**

Appellant, Jemoni Laron Ghee, appeals from the judgment of sentence entered on September 18, 2013, following his conviction of aggravated assault.[1]  On appeal, Appellant challenges the weight of the evidence and the legality of his sentence.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's January 24, 2014 opinion.

> The co-defendants in this matter are Jemoni L. Ghee (No. 65-2013) and Jelani L. Ghee (66-2013). They were charged by way of criminal complaint by Pennsylvania State Police — Chambersburg on November 8, 2011.  They were both charged

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1).

with Criminal Attempt to Commit Homicide,[2] Aggravated Assault, Robbery,[3] and Simple Assault.[4]   The cases were consolidated for purposes of trial.  The matter was tried to a jury on August 12 through August 15, 2013.  The jury found the defendants guilty of aggravated assault, and not guilty as to the remaining charges.   The defendants were sentenced on September 18, 2013.

Both defendants filed timely post sentence motions and requested that the briefs not be due until transcripts of the trial have been produced.  The transcripts have been filed and all parties have submitted their briefs.  The matter is now ready for decision. The facts relevant to these post sentence motions are the same, but the issues raised as to each defendant are different.  Therefore, the issues in the discussion section below will be identified as to each defendant.

*    *    *

Many of the facts of this case are undisputed unless otherwise noted. On November 7, 2012, the Defendants and the victim, Clarence Green, traveled from Franklin County to the Hollywood Casino in Dauphin County.  Jelani drove, [Appellant] sat in the front passenger seat, and Clarence Green sat in the rear passenger side seat. While driving, the three drank beer and smoked marijuana.  At the casino, Green had gambled and lost all of the money he had on hand, and asked to borrow Jelani's vehicle so that he could locate a Western Union in order to retrieve money that a friend had wired to him.   Green, unfamiliar with the area, got lost and took a long amount of time.   Upon returning to the casino, Green noticed the Ghee brothers walking along the side of the road. Green stopped to pick them up, and Jelani again drove the vehicle back towards Franklin County.  There appeared to be no bitterness about the length of time Green had taken.  Green gave Jelani money for

_____

[2] 18 Pa.C.S.A. § 901(a).

[3] 18 Pa.C.S.A. § 3701(a)(1)(i).

[4] 18 Pa.C.S.A. § 2701(a)(1).

gas, and the three continued to drink and smoke marijuana, and stopped for food.

According to the Ghee brothers, at some point, Green accused [Appellant] of slipping a pill in his drink. He then punched Jelani in the back of the head. Green denies this argument ever happened. Soon after, Jelani parked the vehicle along Wibymarch Drive[,] which is a dark, not often traveled road. Green believed they had stopped in order to take a bathroom break along the side of the road. After exiting the vehicle, Green testified that [Appellant] had come from behind him and wrapped his arm around Green's neck. Green then testified that Jelani began kicking and punching him, and told Green, "you're gonna die, nigger." He said that Jelani then hit him in the head with an object. Green said that he began bleeding immediately after the first hit and that it was difficult for him to breath. The brothers wrestled Green to the ground. As the beating continued, Green testified that he heard Jelani ask if [Appellant] had broken Green's neck yet. [Appellant] replied that he thought he had, but it didn't break yet. After another attempt, Green felt a pop in his neck and his body went limp. He stopped struggling and recalls the brothers removing his watch and removing items from his pockets, including money. The Ghee brothers drove away and Green staggered across the road to a cornfield where he laid down waiting for a vehicle to drive by. He estimated it was about 10-15 minutes before a car came and that it was very cold. After flagging down a vehicle, he was taken to Chambersburg Hospital, however, due to the extent of his injuries, he was taken by helicopter to York Hospital. He testified that he was in the hospital for approximately 10 days. He suffered a broken hyoid bone in his neck, a split liver, [six] broken ribs, and had a filter installed in his chest to prevent blood clots. On cross examination, Green admitted that he had not originally told police that the snap in his neck is what made him go limp. Rather, he had done it as a way to "play dead." Further, he testified that he told police that he said [Appellant] put a pill in a bottle, possibly for himself; but did not say that [Appellant] put a pill in a bottle that was intended for Green to drink.

Jelani testified that following Green's accusation of [Appellant] putting a pill in Green's drink, and Green punching Jelani in the head, the argument escalated and Jelani parked the car on the side of Wibymarch Drive. Green exited the car with

- 3 -

his hands up, prepared to fight. Green and Jelani began fighting and Green took Jelani down. [Appellant] attempted to break up the fight, but Green then wrestled [Appellant] down. Jelani then began punching Green, but Green continued to punch [Appellant]. Jelani then wrapped his arm around Green's neck, choking him, to pull him off. Once Green stopped fighting back, the brothers ran to the car and drove away. Jelani testified that Green chased after the car. The Ghee brothers then called a mutual friend and told them that Green may need a ride home.

Dr. Michael Hughes, trauma surgeon at York Hospital testified for the Commonwealth. He stated that Green was found to have a broken hyoid bone in his neck, fractured ribs, and a severe liver injury. He also had other minor injuries such as abrasions and a laceration on his forehead. The liver injury was graded a level [five] injury on a scale of [one] through [six], [six] being the highest with a high risk of fatality. This type of injury normal comes from blunt force trauma. The [hyoid] injury normally occurs from some sort of force being applied to the neck, such as strangulation. On cross examination, he testified that he did not personally check to see if the [hyoid] was, indeed, broken or if it had never naturally fused together in the first place. Dr. Hughes did testify that it is the radiologist who would check such a detail, and that the radiologist would look to determine [if] the bone had a more jagged or smooth edge in determining if the bone was recently fractured, or if it had never fused.

Dr. Jonathan Arden, forensic pathologist testified as an expert for the defendants. He stated that the hyoid fracture was not a fracture but, rather, was a natural gap between the two bones that normally fuse together. He testified that he has seen thousands of hyoid bones and testified that it is not uncommon for a hyoid bone not to fuse until later in life. Upon reviewing all the medical records and radiologist's report, he noted that the bone had smooth edges which indicates that there was no break. A break would show rough or jagged edges on the bone. Dr. Arden also discussed the injuries to Green's ribs and liver. He stated that the skin abrasions in that area did not indicate that Green was kicked or punched there. Nor were they consistent with the type of injuries one would receive if [he] were dragged by the neck along a road. Rather, they were consistent with the type of abrasions one would receive after being struck by a car. Dr. Arden testified, at length, the reasons for his [belief] that

these injuries were likely caused by being struck by a vehicle and not caused by the fight that occurred between Green and the Ghee brothers.

A nurse from York Hospital also testified that the abrasions on Green's skin appeared to be what is referred to as "road rash" which can be caused when an individual is struck by a vehicle on a paved road.

(Trial Court Opinion, 1/24/14, 1-4).

On September 18, 2013, the trial court sentenced Appellant as a second-strike offender to a period of incarceration of not less than ten years nor more than twenty years. The trial court found that Appellant's previous conviction for "malicious wounding" in Virginia, constituted a crime of violence. (**See** N.T. Sentencing, 9/18/13, at 7).

Appellant filed timely post-sentences motions, which the trial court denied on January 24, 2014. The instant, timely appeal followed. On February 27, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). After receiving several continuances, Appellant filed a timely Rule 1925(b) statement on March 17, 2014. On March 31, 2014, the trial court filed an opinion referencing its January 24, 2014 opinion. **See** Pa.R.A.P. 1925(a); (**see also** Trial Court Opinion, 3/31/14, at unnumbered page 1).

On appeal, Appellant raises the following questions for our review:

1. Did the trial court err in denying Appellant's post[-]sentence motion when the jury's guilty verdict was against the weight of the evidence?

2. Did the trial court err in concluding that the two strike rule was applicable when the two (2) offenses used to apply the two strike rule are not equivalent to one another?

(Appellant's Brief, at 5) (footnote omitted).

In his first issue, Appellant challenges the weight of evidence, alleging that Green's testimony was not credible and that the physical evidence did not support Green's version of the events. (**See** Appellant's Brief, at 19-20). We disagree.

Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial

court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." **Commonwealth v. Diggs**, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

In its opinion denying Appellant's post-sentence motions, the trial court explained its reasoning for rejecting Appellant's weight of the evidence claim. (**See** Trial Ct. Op., 1/24/14, at 5-6). Further, the record reflects that the jury chose to credit Green's testimony and the testimony of the Commonwealth's expert witness, and reject the testimony of Jelani Ghee and the defense expert witness. This Court cannot substitute our judgment for that of the trier of fact. **See Commonwealth v. Holley**, 945 A.2d 241, 246 (Pa. Super. 2008), *appeal denied*, 959 A.2d 928 (Pa. 2008). Further, the jury, sitting as finder of fact, was free to believe the Commonwealth's witnesses and to disbelieve the defense witnesses. **See Commonwealth v. Griscavage**, 517 A.2d 1256, 1259 (Pa. 1986). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." **Commonwealth v. Lee**, 956 A.2d 1024, 1029 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citation omitted).

Thus, after a thorough review of both the trial court's opinion and the record in this matter and we conclude that the trial court did not commit a

palpable abuse of discretion in rejecting Appellant's claim. Therefore, Appellant's weight of the evidence claim fails.

Appellant's second argument challenges the trial court's imposition of the mandatory minimum sentence prescribed by the second strike provision of the Pennsylvania Sentencing Code, 42 Pa.C.S.A. § 9714(a)(1). (*See* Appellant's Brief, at 21-26). The statute states, in pertinent part,

**(a) Mandatory sentence. —**

> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

42 Pa.C.S.A. § 9714(a)(1).

Appellant argues that the trial court erred in treating his out-of-state conviction for "malicious wounding" as a second strike under these sections because his prior offense, which the court accepted as a "first strike" was not "an equivalent crime to Pennsylvania's [a]ggravated [a]ssault statue, which is an enumerated offense, and therefore the ten year mandatory confinement sentence imposed upon him was in error." (Appellant's Brief, at 24).

In **Commonwealth v. Greene**, 25 A.3d 359, (Pa. Super. 2011) (*en banc*), *affirmed*, 81 A.3d 829 (Pa. 2013), this Court discussed Pennsylvania's strikes scheme as follows:

> Where the prior convictions arise from a crime committed outside of Pennsylvania, the convictions are considered a crime of violence if they are equivalent to one of the Pennsylvania statutorily-delineated crimes of violence. **See** 42 Pa.C.S. § 9714(g). Those crimes include:
>
> > murder of the third degree, voluntary manslaughter, aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault), rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related offenses), kidnapping, burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), or robbery of a motor vehicle, or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above[.]
>
> 42 Pa.C.S. § 9714(g). Thus, the Pennsylvania recidivist statute is specifically targeted to encompass a narrow set of inherently dangerous criminal behaviors, and both directs and limits a sentencing court's inquiry. This Court, therefore, must focus on the elements of the crimes of which Appellant was convicted in [Virginia] and determine whether those crimes are substantially equivalent to a crime of violence in our recidivist statute.
>
> The issue before us is one of statutory construction that implicates the legality of the sentence imposed.[5] As a result,

_____

[5] Counsel for Appellant acknowledged that prior counsel failed to include this claim in his Rule 1925(b) statement, but requested review in the interest of judicial economy. (**See** Appellant's Brief, at 5 n. 1). However, an appellant

*(Footnote Continued Next Page)*

our standard of review is *de novo* and our scope of review is plenary. Further, we are required to strictly construe criminal statutes. Any doubt as to a criminal statute's meaning is to be resolved in favor of the defendant. In [**Commonwealth v.**] **Northrip** [985 A.2d 734 (Pa. 2009)], our Supreme Court was faced with determining whether a New York arson statute was substantially equivalent to our arson statute. Therein, the Court stated:

> In determining whether a foreign state's statute is equivalent to a Pennsylvania crime under Section 9174, we hold that the sentencing court is to apply the test this Court articulated in [**Commonwealth v.**] **Shaw** [744 A.2d 739 (Pa. 2000)]. Thus, the court must consider "the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability." [**Shaw supra**,] at 743 (citation omitted). With respect to the underlying policy of the statutes, we hold that analysis of policy considerations is appropriate, though not controlling.

**Id.** [at 740]. As noted in **Shaw**, **supra**, and quoted with approval by the **Northrip** *Co*urt,

> the court may want to discern whether the crime is *malum in se* or *malum prohibitum,* or whether the crime is inchoate or specific. If it is a specific crime, the court may look to the subject matter sought to be protected by the statute, *e.g.,* protection of the person or protection of the property. It will also be necessary to examine the definition of the conduct or activity proscribed. In doing so, the court should identify the requisite elements of the

*(Footnote Continued)* ───────────────

cannot waive a legality of sentence claim. **See Commonwealth v. Dickson**, 918 A.2d 95, 99 (Pa. 2007). This Court has held that challenges to mandatory minimum sentences implicate the legality of sentencing. **See Commonwealth v. Henderson**, 938 A.2d 1063, 1065 n.1 (Pa. Super. 2007), *appeal denied*, 954 A.2d 575 (Pa. 2008).

crime—the *actus reus* and *mens rea*—which form the basis of liability.

Having identified these elements of the foreign offense, the court should next turn its attention to the Pennsylvania Crimes Code for the purpose of determining the equivalent Pennsylvania offense. An equivalent offense is that which is substantially identical in nature and definition [to] the out-of-state or federal offense when compared [to the] Pennsylvania offense.

*Shaw*, *supra* at 743 (brackets in original); *Northrip*, *supra* at 378.

*Greene*, *supra* at 360-62.

Appellant does not dispute that he was convicted in November 2010 of shooting, stabbing, etc., with intent to maim, kill, etc. in violation of Va. Code Ann. § 18.2-51. (*See* Appellant's Brief, at 24). This statute provides:

If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Va. Code Ann. § 18.2-51. Here, Appellant was convicted of aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(1), which provides:

An individual is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1). Similarly to 42 Pa.C.S.A. § 9714(a)(1), Virginia law provides for repeat felony offender enhancement for individuals who

- 11 -

commit second or subsequent crimes of violence. One of the crimes listed is malicious wounding. *See* Va. Code Ann. § 19.2-297.1(A)(d). Thus, like aggravated assault, malicious wounding is considered a crime of violence. *See* Va. Code Ann. § 18.2-46.1 (defining "act of violence" to mean felony offenses described in subsection A of § 19.2-297.1).

For purposes of a conviction for aggravated assault, "[s]erious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. For purposes of a conviction for malicious wounding, Virginia law requires that the injury be committed "with the intent to maim, disfigure, disable, or kill." Va. Code Ann. § 18.2-51. Thus, we conclude tht Virginia's malicious wounding is a substantially equivalent crime to Pennsylvania's aggravated assault. Therefore, Appellant's claim that the trial court wrongly sentenced him as a second-strike offender must fail. *See Greene*, *supra* at 360-62. Appellant's second claim lacks merit.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2014