J-S38013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                         :           PENNSYLVANIA
                                         :

             v.                        :

JAMES CURTIS JOHNSON,        :

            Appellant      :    No. 3515 EDA 2017

Appeal from the Judgment of Sentence February 17, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0013976-2013

BEFORE:   OTT, J., DUBOW, J., and COLINS*, J.

MEMORANDUM BY OTT, J.:          **FILED NOVEMBER 14, 2019**

James Curtis Johnson appeals from the judgment of sentence imposed on February 17, 2017, in the Philadelphia County Court of Common Pleas.[1] The trial court sentenced Johnson to a mandatory minimum term of 10 to 20 years' imprisonment, followed by an aggregate 10 years' probation, after the court, sitting without a jury, found him guilty of robbery, conspiracy, kidnapping, and related charges.[2]  On appeal, Johnson argues (1) the sufficiency and weight of the evidence did not support his convictions of

---

* Retired Senior Judge assigned to the Superior Court.

[1] As will be discussed *infra*, the trial court improperly vacated the sentence imposed on February 17, 2017, and reimposed the same sentence on August 31, 2017.  Because the court had no authority to do so, the second sentence is a legal nullity.

[2] **See** 18 Pa.C.S. §§ 3701(a)(1)(ii), 903, and 2901(a)(1), respectively.

robbery and kidnapping; (2) his conspiracy conviction was for a crime that was not charged, and (3) his second strike mandatory minimum sentence is illegal. For the reasons below, we vacate Johnson's conviction of criminal conspiracy, but in all other respects, we affirm.

The trial court summarized the testimony presented at Johnson's jury trial as follows:

> The complaining witness, Hewlett Brown, testified that on October 18, 2012, [Johnson] loaned his car to Mr. Brown's brother on the condition that he return the vehicle the following day. The next day, October 19, 2012, [Johnson] came to Mr. Brown's sister's Philadelphia home looking for his car. Mr. Brown was unsure where his brother and the car were, but he agreed to go with [Johnson] in search of them. When [Johnson] and Mr. Brown were unable to locate the car, [Johnson] told Mr. Brown he needed help moving some things at a house and took Mr. Brown to 3961 Wyalusing Avenue, Philadelphia, PA 19104.

> When they entered the Wyalusing Avenue home, [Johnson] and two male occupants became aggressive with Mr. Brown. Mr. Brown testified, "His words were that I wasn't going anywhere until he got his car. If he didn't get his car soon, people were going to start dying." [Johnson] took Mr. Brown's cell phone from his pocket. Mr. Brown testified, "They surrounded me and, like, forced me to go into the basement... They forced me into the basement and closed the door." Mr. Brown remained in the basement for "an hour or so" before he realized he could escape through a small window. Mr. Brown got out through the window and contacted the police. Mr. Brown never got his phone back following the incident.

> Officer Joseph Vance testified that Mr. Brown said he was held captive in the basement of a house by three men, but escaped through a basement window. Officer Vance testified, "He said when he had gotten to the house, [Johnson] told the two males that were already inside to keep him in the basement and he was going to stay there until he got his vehicle back and if he didn't get his vehicle back, people were gonna start dying." Mr. Brown then took the police back to the home where he was held captive,

but it had been vacated, so the police held it as a crime scene.
After gathering evidence from the crime scene and the vehicle
borrowed by Mr. Brown's brother, the police put out an arrest
warrant for [Johnson].

Trial Court Opinion, 12/12/2018, at 4-5 (record citations omitted).

Johnson was subsequently charged with numerous offenses in
connection with the crime. The case proceeded to a non-jury trial on
December 7, 2016, at which time, the trial court found Johnson guilty of
robbery, conspiracy, kidnapping, unlawful restraint, false imprisonment, and
terroristic threats,[3] and not guilty of recklessly endangering another person.[4]
On February 17, 2017, Johnson was sentenced to a mandatory minimum term
of 10 to 20 years' imprisonment on the robbery charge as a second strike
offense pursuant to 42 Pa.C.S. § 9714.[5] The court imposed a consecutive
term of 10 years' probation for conspiracy, a concurrent term of 10 years'
probation for kidnapping, and a concurrent term of five years' probation for
terroristic threats.

The convoluted procedural history of this case since Johnson's February
17, 2017, sentencing hearing is as follows. On February 24, 2017, Johnson's

_____

[3] *See* 18 Pa.C.S. §§ 3701(a)(1)(ii), 903, 2901(a)(1), 2902(a)(1), 2903(a), and 2706(a)(1), respectively.

[4] *See* 18 Pa.C.S. §§ 2705.

[5] Section 9714 provides for a mandatory minimum sentence of at least 10 years' imprisonment if the defendant is convicted of a crime of violence and, at the time of the commission of the crime, had previously been convicted of a crime of violence. *See* 42 Pa.C.S. § 9714(a)(1).

trial counsel filed both a timely post-sentence motion, and a motion seeking to withdraw as counsel. A hearing was scheduled for April 5, 2017. However, on February 27, 2017, Johnson filed a *pro se* notice of appeal to this Court. Trial counsel, who was still of record, withdrew that appeal on March 16, 2017. Thereafter, at the April 5th hearing, the trial court granted trial counsel's petition to withdraw, and new counsel was appointed the next day. At an April 10, 2017, status hearing, newly appointed counsel requested time to review the notes of testimony and the previously filed post-sentence motion.[6] The trial court scheduled another status hearing for June 15, 2017. In the meantime, counsel filed a supplemental/amended post-sentence motion on June 7, 2017.

At the June 15th status hearing, counsel asked the trial court to "do something appropriate with the sentence so that the appellate rights are not compromised."[7] N.T., 6/15/2017, at 4. In response, the trial court vacated Johnson's sentence, and continued the matter for "sentencing and motions."

_____

[6] The record does not include a transcript from the April 10th status hearing. However, the comments on the docket imply the trial court granted new counsel permission to file an amended post-sentence motion. *See* Docket Entry, 4/10/2017.

[7] As will be discussed *infra*, a trial court must rule upon a timely filed post-sentence motion within 120 days of the filing of the motion. *See* Pa.R.Crim.P. 720(B)(3)(a). If the court fails to do so within that time period, the motion "shall be deemed denied by operation of law." *Id.* Subsection 720(B)(3)(b) of the Rule permits the court to grant one 30-day extension. Assuming an extension was granted at the April 10th status hearing, the 150-day time period for ruling on the motion would have expired on July 24, 2017.

*Id.* The court scheduled a hearing on the post-sentence motions for August 31, 2017.

On July 3, 2017, counsel filed a second supplemental/amended post-sentence motion. At the August 31, 2017, post-sentence motion/sentencing hearing, the trial court denied all relief on the post-sentence motions, and re-imposed the same sentence previously imposed on February 17, 2017. Counsel filed another post-sentence motion on September 9, 2017, which the trial court denied on October 11, 2017. Thereafter, counsel filed a notice of appeal on October 28, 2017.

On November 14, 2017, Johnson complied with the trial court's October 31, 2017, order directing him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 27, 2018, this Court sent a notice to the trial court regarding the delinquent record. The trial court responded on March 8, 2018, that "numerous opinions are being worked on" and the record would be remanded "in due course." Docket No. 3515 EDA 2017, Entry, 3/8/2018. Thereafter, on July 11, 2018, counsel filed a motion to withdraw because he had been hired by the Philadelphia District Attorney's Office, and was scheduled to begin on July 16, 2018. On July 20, 2018, this Court entered an order, granting the request to withdraw, and directing the trial court to appoint new counsel within 10 days. *See* Order, 7/20/2018.

The trial court took no immediate action. Therefore, on October 10, 2018, Johnson filed a *pro se* petition, requesting the trial court file an opinion and appoint appellate counsel. Present counsel, John Belli, Esq., entered his

appearance the next day. Despite the fact that a concise statement had been filed by former counsel, the trial court entered an order on October 15, 2018, directing new counsel to file a Rule 1925(b) statement within 21 days. On October 31, 2018, counsel filed a concise statement which incorporated the issues from the previous Rule 1925(b) statement, and requested additional time to file a supplemental statement because notes of testimony from the June 15, 2017, hearing had not been transcribed. **See** Request for Extension of Time to File a Supplemental Statement of Matters Upon Receipt of All Notes of Testimony, 10/31/2018, at 1. Although the trial court failed to respond to counsel's request for an extension of time, counsel filed a supplemental concise statement on December 4, 2018. The trial court filed an opinion on December 12, 2018.

Before we address the substantive claims on appeal, we must first determine whether this appeal is properly before us.[8] Pennsylvania Rule of Criminal Procedure 720 governs the filing of post-sentence motions. When a defendant files a timely post-sentence motion, the Rule provides, in relevant part:

> (3) Time Limits for Decision on Motion. The judge shall not vacate sentence pending decision on the post-sentence motion, but shall decide the motion as provided in this paragraph.

---

[8] Although neither of the parties addressed the timeliness of this appeal in their briefs, we may consider the issue of jurisdiction *sua sponte*. **See Commonwealth v. Khalil**, 806 A.2d 415, 418 (Pa. 2002), *appeal denied*, 818 A.2d 503 (Pa. 2003).

- 6 -

> (a) Except as provided in paragraph (B)(3)(b), the judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law.
>
> (b) Upon motion of the defendant within the 120-day disposition period, for good cause shown, the judge may grant one 30-day extension for decision on the motion. If the judge fails to decide the motion within the 30-day extension period, the motion shall be deemed denied by operation of law.
>
> (c) When a post-sentence motion is denied by operation of law, the clerk of courts shall forthwith enter an order on behalf of the court, and, as provided in Rule 114, forthwith shall serve a copy of the order on the attorney for the Commonwealth, the defendant's attorney, or the defendant if unrepresented, that the post-sentence motion is deemed denied. This order is not subject to reconsideration.

Pa.R.Crim.P. 720(B)(3)(a)-(c).

In the present case, Johnson filed a timely post-sentence motion on February 24, 2017. Therefore, pursuant to Rule 720(a), the trial court had 120 days, or until June 24, 2017, to enter an order granting or denying the motion. Even assuming the trial court granted a 30-day extension at the April 10th status hearing, the court only had until July 24, 2017 to enter an order deciding the motion. However, the court did not do so within the requisite time period. Rather, on June 15, 2017, the trial court vacated the sentence, which, under Rule 720(B)(3), it was not empowered to do. *See* Pa.R.Crim.P. 720(B)(3) ("The judge shall not vacate sentence pending decision on the post-sentence motion"). Indeed, Johnson's motion should have been denied by operation of law no later than July 24, 2017. Accordingly, the August 31,

2017, judgment of sentence and order denying Johnson's post-sentence motion are both legal nullities, and Johnson's subsequent notice of appeal, filed on October 28, 2017, is untimely.

Although "the appellate courts cannot generally extend the time for filing an appeal[,]" we have declined to quash an otherwise untimely appeal when a "breakdown of the processes of the trial court caused the appeal to be untimely." **Commonwealth v. Khalil**, 806 A.2d 415, 420 (Pa. Super. 2002), *appeal denied*, 818 A.2d 503 (Pa. 2003). In **Kahlil**, after the defendant filed a timely post-sentence motion, the trial court issued a rule to show cause to the Commonwealth with a date beyond the 120-day decision period. This was compounded when the defendant requested, and the court granted, a 30-day extension, both after the 120-day period. The defendant subsequently filed an appeal within 30 days of the order denying his post-sentence motion. **See id.** at 418. On appeal, a panel of this Court refused to quash the appeal, opining:

> [T]he clerk of courts failed to enter the order deeming Appellant's post-sentence motions denied by operation of law. This error was compounded by the trial court's original error of scheduling the September 5th rule returnable after the 120-day period for decision on post-sentence motions and was further compounded by the trial court's erroneous grant of an extension of time on the post-sentence motions and subsequent order deeming the post-sentence motions denied by operation of law (which were both entered after the 120-day period). This order is important in two respects. First, it informs a defendant that the 30-day time limit for direct appeal has begun, and, second, it appraises the defendant of his rights on appeal. We are unable to ignore the failure of the trial court to inform Appellant of his appeal rights, and we are constrained to find that it was the breakdown of the

processes of the trial court that caused Appellant's untimely appeal.

*Id.* at 421. *See also Commonwealth v. Rodriguez*, 174 A.3d 1130, 1138-1139 (Pa. Super. 2017) (concluding facially untimely appeal was caused in part by breakdown in processes of trial court when court clerk entered order denying post-sentence motion by operation of law prematurely, which caused defendant to seek extension, which the court granted, and then court denied the motion well past statutory time period), *appeal denied*, 186 A.3d 941 (Pa. 2018).

Here, the trial court's decision to vacate Johnson's February 17, 2017, sentence before the expiration of the 120-day decision period was clearly improper. *See* Pa.R.Crim.P. 720(B)(3). However, when it did so, Johnson could no longer file an appeal from the judgment of sentence. Rather, his notice of appeal was "timely" filed following the court's reinstatement of the original sentence on August 31, 2017.[9] Accordingly, we conclude the untimely appeal was caused by a breakdown in the court's processes, and decline to quash this appeal.

---

[9] As noted *supra*, following the August 31st re-imposition of sentence, Johnson filed another post-sentence motion, within the requisite 10-day period, which the court denied on October 11, 2017. Johnson then "timely" filed a notice of appeal less than 30 days later.

In his first two issues on appeal,[10] Johnson argues the evidence was insufficient to sustain his convictions of kidnapping and robbery. Our review of a challenge to the sufficiency of the evidence is well-established:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Green*, 149 A.3d 43, 47–48 (Pa. Super. 2016) (quotation omitted), *appeal denied*, 168 A.3d 1255 (Pa. 2017).

The crime of kidnapping is defined in Section 2901 of the Crimes Code as follows:

_____

[10] We have consolidated and reordered Johnson's claims for ease of disposition.

Except as provided in subsection (a.1), a person is guilty of kidnapping … if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

(1) To hold for ransom or reward, or as a shield or hostage.

(2) To facilitate commission of any felony or flight thereafter.

(3) To inflict bodily injury on or to terrorize the victim or another.…

18 Pa.C.S. § 2901(a)(1)-(3). Evidence the victim was held for one hour is sufficient to satisfy the "substantial period" of time element. ***Commonwealth v. Hook***, 512 A.2d 718, 720 (Pa. Super. 1986). Moreover, the Pennsylvania Supreme Court has held:

a "place of isolation" is not geographic in nature, but contemplates the confinement of a victim where he or she is separated from the normal protections of society in a fashion that makes discovery or rescue unlikely.

***Commonwealth v. Rushing***, 99 A.3d 416, 425 (Pa. 2014). In ***Rushing***, the Court found the victims were held in a place of isolation when they were confined by the defendant in their own home. ***See id.*** at 426-427. ***But see Hook***, ***supra***, 512 A.2d at 720 (holding victims were not confined in a "place of isolation" when defendant attacked them in their own apartments because the apartments were frequented by relatives and business contacts and located above an open business, and the confinement "was incidental to" the defendant's attempted rape of one of the victims).

Here, Johnson argues the Commonwealth failed to prove he held Brown for a substantial period of time in a place of isolation. ***See*** Johnson's Brief at 13. Rather, he notes Brown "voluntarily" accompanied him to the home where Brown was "directed to go into the basement." ***Id.*** at 15. Johnson

- 11 -

emphasizes Brown was not bound or physically restrained and was free to roam the basement, from which "he was able to escape rather easily[.]" *Id.* at 21. Furthermore, Johnson contends the evidence did not establish he held Brown (1) for ransom or as hostage, (2) in order to facilitate a felony, or (3) to terrorize him. *See id.* at 15-16, 18. He maintains: "Although an inference could be drawn that [Brown] was directed into the basement and would be held therein until [Johnson's] car was returned, the record contains no evidence to support the inference so it would be impermissible to draw it." *Id.* at 16. Moreover, Johnson asserts there was no testimony presented that Johnson or his cohorts terrorized Brown, and the "alleged robbery of the phone was not part of the kidnapping[.]" *Id.* at 18.

The trial court, which sat as fact-finder, concluded the evidence established Johnson unlawfully confined Brown for a substantial period of time in a place of isolation with the intent to hold him for ransom. *See* Trial Court Opinion, 12/12/2018, at 6. The court opined:

> [Johnson], acting in concert with two accomplices, forced Mr. Brown into the basement of a home under the threat that he would die if [Johnson] did not get his vehicle back. Mr. Brown was trapped in a place of isolation, the basement of a foreign home, without access to the outside world as he was deprived of his cell phone and unable to leave for fear of death. Mr. Brown was held there for 'an hour or so,' which is sufficient to establish a substantial period of time. Although there was no evidence that [Johnson] made a communication regarding the exchange of Mr. Brown for his vehicle, precedent holds that such communication is unnecessary. Mr. Brown's testimony clearly established that [Johnson's] plan was to hold Mr. Brown until he received his vehicle, thus the evidence was sufficient to convict [Johnson] of Kidnapping.

- 12 -

*Id.* at 6-7.

Upon our review of the record, we agree. Brown testified Johnson lured him to the residence under the guise of helping Johnson move things out of a house. *See* N.T., 12/7/2016, at 15. However, once they arrived, Brown claimed Johnson's "whole demeanor change[d]," and he was "upset about the car." *Id.* at 16-17. According to Brown, Johnson stated: "I wasn't going anywhere until he got his car. If he didn't get his car soon, people were going to start dying." *Id.* at 17. Brown testified Johnson and his two cohorts "subdued" him, and took his cell phone from his pocket. *Id.* at 17. According to Brown, the men then "surrounded" him, "forced [him] into the basement and closed the door." *Id.* at 18. He stated he could hear the men "walking and talking upstairs." *Id.* at 20. Brown testified he was in the basement for "an hour or so" before he noticed the bars across the windows were "loose," and he was able to take out the window frame and escape. *Id.* at 19. When asked if Johnson told him why he was "putting [him] in the basement[,]" Brown replied: "Because of his car. My brother has his car, he wanted his car." *Id.* at 21-22.

We find this testimony more than sufficient to support Johnson's kidnapping conviction. Johnson and his cohorts unlawfully confined Brown in the basement of an unfamiliar home for an hour. There is no indication anyone, with the exception of his captors, knew he was there so that his rescue or discovery was unlikely. *See Commonwealth v. Mease*, 516 A.2d 24, 26 (Pa. Super. 1986) (evidence sufficient to show victim was kept in a

"place of isolation," when he was confined in defendant's basement; "[t]he fact that friends of [defendant] were present from time to time did not negate the victim's isolation from the usual protections of society") (footnote omitted), *appeal denied*, 531 A.2d 428 (Pa. 1987). Furthermore, Johnson's statements to Brown established he held Brown as ransom for the return of his car. **See** N.T., 12/7/2016, at 17, 21-22. Accordingly, we find no basis to overturn Johnson's kidnapping conviction.

Johnson also challenges his conviction of robbery as a first-degree felony. Pursuant to Section 3701 of the Crimes Code, a defendant is guilty of robbery as felony of the first degree if, "in the course of committing a theft," he:

> (i) inflicts serious bodily injury upon another;
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
>
> (iii) commits or threatens immediately to commit any felony of the first or second degree[.]

18 Pa.C.S. § 3701(a)(1)(i)-(iii).[11] A person commits theft if he "unlawfully takes … moveable property of another with the intent to deprive him thereof." 18 Pa.C.S. § 3921(a). The "intent to deprive" must be either the intent to withhold the property permanently or, *inter alia*, "with intent to restore [it] only upon payment of reward or other compensation[.]" 18 Pa.C.S. § 3901.

---

[11] Subsection (b)(1) provides that a conviction under Subsection (a)(1)(i), (ii), or (iii), is a felony of the first degree. 18 Pa.C.S. § 3701(b)(1).

Preliminarily, we note Johnson complains his robbery conviction cannot be sustained because the trial court misunderstood the object of the robbery. *See* Johnson's Brief at 49. During closing arguments, Johnson's counsel proceeded to argue the evidence did not establish Johnson robbed Brown of his cell phone. At that point, the trial court questioned, "I thought the basis of the robbery was the car?" N.T., 12/7/2016, at 50. Defense counsel responded the car was voluntarily given but "the Commonwealth [was] trying to say the cell phone was taken." *Id.* The court subsequently asked the Commonwealth's attorney, "What about the subject matter of the robbery?" *Id.* at 52. Counsel replied, "Your Honor, I argue that the car and the cell phone – the cell phone was taken in the course of committing an F-1 felony." *Id.* Counsel further argued Johnson intended to deprive Brown of his cell phone while he kidnapped him. *See id.* at 53. Accordingly, despite some initial confusion, the court's verdict was based on the robbery of Brown's cell phone. *See* Trial Court Opinion, 12/12/2018, at 3-4, 7-8.

Because Brown was not injured during the robbery, Johnson could only be found guilty of a robbery as a first-degree felony if the evidence demonstrated he threatened Brown or intentionally put Brown in fear of immediate serious bodily injury, or he robbed Brown while committing another first-degree felony. The trial court found the evidence sufficient under both Subsections 3701(a)(1)(ii) and (a)(1)(iii). The court opined:

> [Johnson's] taking of Mr. Brown's cell phone was an unlawful taking constituting a theft. Although it is unlikely that [Johnson] had an intent to deprive Mr. Brown of the cell phone permanently,

- 15 -

it is reasonable that [Johnson] intended to give the cell phone back upon "payment of reward" of his vehicle. Additionally, at the time [Johnson] took Mr. Brown's cell phone, he made a credible threat to kill Mr. Brown. Moreover, as discussed above, the cell phone was taken in the course of the commission of a kidnapping, which is a felony of the first degree.

Trial Court Opinion, 12/20/2018, at 7-8.

Preliminarily, Johnson notes the verdict sheet reflected he was convicted of violating only Subsection 3701(a)(1)(ii), and not (a)(1)(iii). **See** Johnson's Brief at 28. **See also** Trial Disposition and Dismissal Form, 12/7/16. Similarly, the Criminal Information charged him only with a violation of Subsection 3701(a)(1)(ii). Accordingly, we will confine our analysis to that subsection.

Johnson insists the evidence was insufficient to support a conviction under Subsection 3701(a)(1)(ii) because the cell phone was "simply removed" from Brown's pocket and was "not taken under threat of imminent serious bodily injury." Johnson's Brief at 24. He argues:

> There was no request of or demand made to [Brown] that he surrender the phone or else he would be harmed and there was no struggle over the phone accompanied by any threats that unless [Brown] handed his phone over, he would suffer serious bodily injury.

**Id.** Moreover, Johnson states there was no evidence any of the alleged perpetrators were armed. **See id.** Because the phone was not taken "following or contemporaneously with a threat to cause serious bodily injury[,]"[12] Johnson contends the facts here are similar to a non-violent purse

---

[12] Johnson's Brief at 25.

- 16 -

snatching. ***See Commonwealth v. Ostolaza***, 406 A.2d 1128, 1130 (Pa. Super. 1979) (finding "brief tug of war over the wallet" coupled with victim's testimony she was "afraid" was insufficient to conclude defendant intentionally placed victim in fear of serious bodily injury); ***Commonwealth v. Scott***, 369 A.2d 809, 813 (Pa. Super. 1976) (reversing delinquency adjudication on charge of robbery under Section 3701(a)(1)(i)-(iii) when defendant simply snatched complainant's purse; "there is no evidence whatsoever that the complainant relinquished her purse in response to any violent act [or] threat of such an act."). Furthermore, Johnson argues the evidence did not establish he intended to permanently deprive Brown of the phone as is required under the statute. ***See*** Johnson's Brief at 29. Accordingly, he insists his robbery conviction must be vacated.

Our review of the record, however, reveals sufficient evidence to support Johnson's conviction under Subsection 3701(a)(1)(ii). Brown testified that as soon as he arrived at the house with Johnson, Johnson's "whole demeanor changed." N.T., 12/7/2016, at 16. Brown explained Johnson told him he "wasn't going anywhere until [Johnson] got his car" and if Johnson "didn't get his car soon, people were going to start dying." ***Id.*** at 17. Immediately thereafter, Johnson and his two cohorts "surrounded" and "subdued" Brown, took Brown's phone from his pocket, "forced" Brown into the dark basement, and closed the door. ***Id.*** at 17-18. This Court has explained that "[f]or the purposes of Section 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably

placed a victim in fear of 'immediate serious bodily injury.'" ***Commonwealth v. Ouch***, 199 A.3d 918, 924 (Pa. Super. 2018). We conclude Johnson's threat that "people were going to start dying," uttered directly before Johnson took Brown's phone and forced him into the basement, was sufficient for the trial court to find Johnson took Brown's phone while "intentionally" putting him in fear of serious bodily injury. 18 Pa.C.S. § 3701(a)(1)(ii).

With regard to Johnson's contention that the evidence did not support a finding that he intended to permanently deprive Brown of the cell phone, we find Johnson misconstrues the statute. As noted above, in order to find a defendant guilty of robbery, he must be acting "in the course of committing a theft." 18 Pa.C.S. § 3701(a)(1). A person is guilty of theft if he "unlawfully takes … movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). The Crimes Code defines "deprive" as, *inter alia*, "[t]o withhold property of another permanently … **or** with intent to restore only upon payment of reward or other compensation[.]" 18 Pa.C.S. § 3901 (emphasis supplied). Here, the trial court determined Johnson deprived Brown of his cell phone with the intent to return it only "upon payment of reward," that is, the return of his own vehicle. Trial Court Opinion, 12/12/2018, at 8. Accordingly, we agree with the trial court's determination that the evidence was sufficient to support Johnson's conviction of both kidnapping and robbery.

Next, Johnson challenges the weight of the evidence supporting those convictions.[13]  Our review of such a challenge is well-settled:

> When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. **Commonwealth v. Leatherby**, 116 A.3d 73, 82 (Pa. Super. 2015).  This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented.  **Id.**  Simply put, "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Id.**  A new trial is warranted in this context only when the verdict is "so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Commonwealth v. Morales**, 625 Pa. 146, 91 A.3d 80, 91 (2014).
>
> Of equal importance is the precept that, "The finder of fact ... exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence." **Commonwealth v. Sanchez**, 614 Pa. 1, 36 A.3d 24, 39 (2011) (citation omitted) **see also Commonwealth v. Page**, 59 A.3d 1118, 1130 (Pa. Super. 2013) ("A determination of credibility lies solely within the province of the factfinder."); **Commonwealth v. Blackham**, 909 A.2d 315, 320 (Pa. Super. 2006) ("It is not for this Court to overturn the credibility determinations of the factfinder.").

**Commonwealth v. Konias**, 136 A.3d 1014, 1022-1023 (Pa. Super. 2016), *appeal denied*, 145 A.3d 724 (Pa. 2016).

---

[13] We note Johnson preserved his weight challenge in all four of his post-sentence motions.  **See** Pa.R.Crim.P. 607(A)(3); Post-Sentence Motion, 2/24/2017, at 1; Supplemental/Amended Post-Sentence Motion, 6/7/2017, at 2; Second Supplemental/Amended Post-Sentence Motion, 7/3/2017, at 2; Post-Sentence Motion, 9/9/2017, at 2.

Here, Johnson argues his convictions were against the weight of the evidence because Brown's testimony was "inconsistent, confusing, and contradictory." Johnson's Brief at 43. Specifically, Johnson emphasizes:

> [T]he window [Brown] allegedly removed was still in place and the doors to the basement and backyard were open and/or unlocked when police arrived, the basement window lacked bars, the victim lied about how the police became involved, the victim himself admitted that he was not directly threatened, restrained or harmed physically or mentally, and it is unclear exactly what the property is that served as the basis for the robbery charge … the victim's cell phone or [Johnson's] car.

*Id.* at 43-44. Moreover, he contends the verdicts "shock the conscience" because Brown "easily escaped from the basement thereby vitiating the claim that he was being held against his will." *Id.* at 46.

In addressing this claim, the trial court opined Brown's testimony was "reliable and consistent with the evidence produced at trial." Trial Court Opinion, 12/12/2018, at 10. Moreover, the court found the inconsistencies in Brown's testimony had "little bearing" on whether Johnson committed the crimes charged. *Id.* The fact Brown testified the basement window had "two thin bars" across it,[14] but Officer Vance did not recall seeing any bars on the inside of the window when he responded,[15] is not germane to the underlying determination of whether Brown was held in the basement against his will. Nor is it significant that when the officers arrived the back door was ajar and

---

[14] N.T., 12/7/2016, at 25.

[15] *Id.* at 39.

no one was inside. The trial court found Brown's testimony credible with regard to the salient facts supporting Johnson's convictions of robbery and kidnapping. Our review of the record reveals no abuse of discretion. Accordingly, no relief is warranted.

In his third issue, Johnson contends his conviction of criminal conspiracy must be vacated because he was charged with conspiracy to commit robbery, but was convicted of conspiracy to commit kidnapping. *See* Johnson's Brief at 30. Johnson maintains the trial court "*sua sponte*" convicted him of a crime for which he had not been charged. *Id.* We are constrained to agree.

The Criminal Information charged Johnson with conspiracy, and specified the objective of that conspiracy was robbery. *See* Information, 11/19/2013, at Count 2. However, the Trial Disposition and Dismissal Form, as well as both sentencing orders, indicate Johnson was convicted of conspiracy to commit kidnapping. *See* Trial Disposition and Dismissal Form, 12/7/2016; Order of Sentence, 2/17/2017; Order Upon Reconsideration of Sentence, 8/31/2017. Acknowledging the discrepancy in its opinion, the trial court stated it was a "clear clerical error," and the court amended the sentencing order to "accurately reflect [Johnson] was convicted of Conspiracy-Robbery, rather than Conspiracy-Kidnapping." Trial Court Opinion, 12/12/2018, at 11-12. The court explained, "at the sentencing hearing it was clearly established that the intended charge was conspiracy to commit robbery, and that the evidence was sufficient to convict [Johnson]." *Id.* at 11.

Upon our review of the record, we do not agree the variance between the charging documents and the verdict constituted a "clear clerical error" that the court was empowered to amend. *See id.* at 11. Here, the Information charged Johnson with one count of conspiracy, listing the objective as "Robbery" and the overt act as "Robbed Complainant." Information, 11/19/2013, at Count 2. During trial, the Commonwealth stated it was moving on a charge of conspiracy, but did not specify the object of that conspiracy. *See* N.T., 12/7/2016, at 6-7. Similarly, at the conclusion of trial, the court found Johnson guilty of conspiracy, but again, did not specify the object of the conspiracy. *See id.* at 54. As noted *supra*, the Trial Disposition and Dismissal Form lists the relevant charge as "Conspiracy-Kidnapping for Ransom," with a disposition of "Guilty."[16] Trial Disposition and Dismissal Form, 12/7/2016.

During the February 17, 2017, sentencing hearing, the trial court asked the Commonwealth to summarize the charges of which Johnson was convicted. The Commonwealth's attorney responded, "He was convicted of robbery, kidnapping as well as conspiracy for kidnapping in this case[.]" N.T., 2/17/2017, at 16. Later during the hearing, the following exchange took place:

---

[16] The Comment at the bottom of the form also describes the relevant charge as "Conspiracy to commit Kidnapping." Trial Disposition and Dismissal Form, 12/7/2016.

[Johnson:]    You charged me with conspiracy to commit kidnapping.

THE COURT:  I didn't charge you with anything.

[Johnson]:  I'm sorry.  Found guilty.  I'm not good at the language.  I just started trying to research myself.  I was found guilty of conspiracy, right, to commit kidnapping.

THE COURT:  Right.

[Johnson]: On my arraignment sheet it says conspiracy to commit robbery.  And also you said the object of the robbery was a vehicle.  And you made it clear that it was the phone, right?  If it was a phone that – you know, it wasn't a robbery.  You said that they could have taken the phone to call the cops.

But on the arraignment sheet I have here it says that the object of the robbery was a phone, not the vehicle.

* * * *

THE COURT: … And Mr. Johnson is correct about the bill of information.  The bill of information says it was conspiracy to commit robbery.  I had the bill at the time.  I just asked for a copy.  But I went through the file and found a copy from trial.  I haven't heard this testimony for two months, but at the moment I'm having trouble figuring out how it could be conspiracy to commit robbery.

[Commonwealth attorney]: Your Honor, I saw there was discussion on this.  I don't recall exactly when.  But I do recall being asked what the conspiracy charges for that and I believe I said kidnapping.  I don't know when, if that was on record or at some point after the verdict.

[Defense counsel]:  I recall.

*Id.* at 29-30, 33-34.  At that point, the court "put the matter aside for a little bit" so that "everybody … had the chance to read the notes of testimony[.]"

*Id.* at 34.

After a brief recess, the following discussion took place:

[Defense counsel]: … As far as the conspiracy to commit robbery, there is a variance between the allegations and proof. The bills of information do say conspiracy to commit robbery. Yet, when you read the notes of testimony from the trial it doesn't establish that there was a conspiracy to commit robbery; perhaps kidnapping, but not robbery. So there is the variance there.

THE COURT: Okay.

* * * *

[Commonwealth's attorney]: So even if the bills of information, there is robbery and there is a conspiracy to commit robbery because he uses three people, which is the force you need to grab the phone, to grab the phone from him.

THE COURT: Are you saying conspiracy may not have arisen before the victim was transported? But after he got to the house there was a conspiracy in agreement that we will hold him without his phone.

[Commonwealth's attorney]: Correct, Your Honor.

THE COURT: Until the car is returned. Yeah, that's pretty good.

[Commonwealth's attorney]: And all of that is within the notes of testimony. And I made argument as to the phone. So it's all supported by the evidence at trial.

THE COURT: Okay.

*Id.* at 38-40.

The above discussion reveals the trial court did, in fact, find Johnson guilty of **conspiracy to commit kidnapping** at trial. That crime, however, was not charged. Although during the sentencing hearing the Commonwealth convinced the court that the evidence also supported a conviction of conspiracy to commit robbery, we conclude the court was **without authority to amend the verdict** at that time. This is not the same as when the Commonwealth seeks to amend the criminal information at trial. Here, trial

- 24 -

had ended, and Johnson was convicted of a crime for which he was not charged. Therefore, we are constrained to vacate his conviction of criminal conspiracy.

Lastly, Johnson contends the mandatory minimum sentence the court imposed on his robbery conviction is illegal. Johnson maintains the Commonwealth failed to prove the conviction was his second crime of violence under Pennsylvania's Three Strikes' Law, 42 Pa.C.S. § 9714. *See* Johnson's Brief at 35.

Relevant herein, Section 9714 provides for the imposition of a mandatory minimum sentence of 10 years' incarceration when a person is convicted of a crime of violence, "if at the time of the commission of the current offense the person had previously been convicted of a crime of violence[.]" 42 Pa.C.S. § 9714(a)(1). Subsection 9714(g) defines the term "crime of violence" as, *inter alia*, "robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) … or an equivalent crime in another jurisdiction." 42 Pa.C.S. § 9714(g). Subsection 9714(d) further provides that when a defendant contests the accuracy of a prior record, "the court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section." 42 Pa.C.S. § 9714(d).

In the present case, at the February 17, 2017, sentencing hearing, the Commonwealth invoked the second strike mandatory minimum based upon Johnson's prior conviction of armed robbery in the state of Florida. *See* N.T.,

- 25 -

2/17/2017, at 9. Defense counsel objected on the basis that it was unclear if the prior conviction was a juvenile adjudication. *See id.* at 10-11. After further discussion, the court determined the prior robbery was an adult conviction, and proceeded to impose the mandatory minimum 10 to 20 years sentence. *See id.* at 11-15, 46-47.

Johnson now challenges the court's imposition of the second strike mandatory minimum on the basis that his Florida conviction of armed robbery was not a crime of violence as defined in Subsection 9714(g). *See* Johnson's Brief at 35. This issue implicates the legality of sentencing, and, therefore, "our standard of review is *de novo* and the scope of our review is plenary." *Commonwealth v. Northrip*, 985 A.2d 734, 736 (Pa. 2009).

As noted above, a foreign offense qualifies as a prior "crime of violence" for purposes of the enhanced penalties under Section 9714 if it is an "equivalent crime" to any of the Pennsylvania offenses listed in Subsection 9714(g). 42 Pa.C.S. § 9714(g). The Pennsylvania Supreme Court crafted the following test to determine if offenses are equivalent: "a court must consider 'the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability.'" *Northrip*, *supra*, 985 A.2d at 740, *quoting* *Commonwealth v. Shaw*, 744 A.2d 739, 743 (Pa. 2000). "[T]he focus is not on the facts underlying a conviction, but rather on the statute that triggered the conviction." *Id.* at 741. This Court has explained, "the offenses do not identically have to mirror each other but must be substantially equivalent to invoke operation of 42

Pa.C.S. § 9714." ***Commonwealth v. Ward***, 856 A.2d 1273, 1277 (Pa. Super. 2004).

Here, Johnson was convicted of armed robbery in Florida in 1990. At that time, Florida's robbery statute read as follows:

> 812.13. Robbery
>
> (1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear.
>
> (2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 812.13 (1), (2)(a) (1987).

Pursuant to Section 9714(g), robbery constitutes a "crime of violence" under Pennsylvania law only as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii), or (iii), that is, if, "in the course of committing a theft," the defendant:

> (i) inflicts serious bodily injury upon another;
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; [or]
>
> (iii) commits or threatens immediately to commit any felony of the first or second degree[.]

18 Pa.C.S. § 3701(a)(1)(i)-(iii). The Pennsylvania Crimes Code defines "serious bodily injury" as:

> Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

18 Pa.C.S. § 2301.

Johnson insists the Florida statute under which he was convicted was "much broader" than those subsections of the Pennsylvania robbery statute that are designated as crimes of violence in Subsection 9714(g), and, in particular, did not include a requirement that the defendant's threat "must put [the victim] in fear of imminent serious bodily injury." Johnson's Brief at 38. Johnson further argues that, pursuant to **Northrip**, *supra*, "the critical inquiry is whether any factual scenario sufficient for conviction" under the foreign statute "would correspondingly have been insufficient for conviction" under Pennsylvania's statute. *Id.* at 39, *quoting* **Northrip**, *supra*, 985 A.2d at 739. Because there "obviously are factual scenarios sufficient to trigger a conviction under the Florida Robbery Statute" which would be insufficient to support a conviction under Section 3701(a)(1)(i), (ii), or (iii), Johnson maintains his Florida conviction was not a "crime of violence" pursuant to Subsection 9714(g). *Id.* Rather, he argues the facts of the present case are similar to those in **Commonwealth v. Greene**, 25 A.3d 359 (Pa. Super. 2011) (*en banc*), *aff'd*, 81 A.3d 829 (Pa. 2013), in which an *en banc* panel of this Court found that the defendant's prior conviction of robbery in Massachusetts did not qualify as a prior crime of violence under Subsection 9714(g).

First, we note Johnson has misconstrued the holding in **Northrip**. In that case, the Supreme Court considered whether "the Superior Court panel properly determined that the New York statute of Arson in the Third Degree … does not constitute an offense equivalent to the Pennsylvania statute of Arson Endangering Persons[.]" **Northrip**, *supra*, 985 A.2d at 736. Although the

Superior Court's opinion in that case did focus on hypothetical scenarios to determine "whether there was any possibility that an act of arson would result in conviction under New York's law and would not result in conviction under the allegedly equivalent Pennsylvania law[,]" the Supreme Court rejected that analysis, concluding "consideration of hypothetical scenarios is unwarranted." *Id.* at 739, 740. Rather, the Court reiterated the test first set forth in **Shaw**, **supra**: "[T]he court must consider the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability." **Northrip**, **supra**, 985 A.2d at 740, *quoting* **Shaw**, **supra**, 744 A.2d at 743.

Furthermore, the Massachusetts statute at issue in **Greene**, **supra**, is distinct from the one before us because it criminalized robbery by an *unarmed* person when the taking was accomplished by "force and violence, or by assault and putting in fear[.]" **Greene**, **supra**, 25 A.3d at 362, *citing* M.G.L.A. 265 § 19(b). The **Greene** *en banc* panel concluded that, unlike the Pennsylvania robbery statute at issue, the Massachusetts statute did not require "a threat of serious bodily harm or a person to be put in fear of serious bodily harm." *Id.* at 364. However, the panel stated, "Were the statute at issue herein the Massachusetts armed robbery provision, … there would be no dispute that the Massachusetts law was substantially similar to the Pennsylvania robbery statute." *Id.* at 365 (footnote omitted).

In the present case, we agree Johnson's prior conviction of robbery in Florida is an equivalent offense to Pennsylvania's robbery statute at Section

3701(a)(1)(ii). We note that Subsection (1) of the Florida robbery statute required only that the defendant take property from another by the use of "force, violence, assault or putting in fear." Fla Stat. § 812.13(1) (1987). There was no mandate that the defendant threaten the victim with or intentionally put the victim in fear of **serious bodily injury** as in Pennsylvania's statute. However, Johnson was convicted of **armed robbery** under Subsection 812.13(2)(a), a first-degree felony. That subsection required proof that "in the course of committing the robbery [Johnson] carried a firearm or other deadly weapon[.]" Fla Stat. § 812.13(2)(a) (1987). As the *en banc* panel recognized in **Greene**, "the use of a weapon to threaten another will place a person in fear of serious bodily injury." **Greene**, **supra**, at 365. **See also Commonwealth v. Ward**, 856 A.2d 1273 (Pa. Super. 2004) (finding "threat of serious bodily injury is implicit in New York [robbery] offense" which required proof the defendant used or threatened to use a "dangerous instrument" during commission of or flight from robbery; New York statute was equivalent offense for purposes of Section 9714). Accordingly, we conclude the trial court properly imposed a 10-year mandatory minimum sentence on Johnson's robbery conviction as a second strike offense under Section 9714(a).

Therefore, as explained above, we are constrained to vacate Johnson's conviction for criminal conspiracy. However, because that ruling does not

upset the court's sentencing scheme,[17] we need not remand for resentencing.

**See Commonwealth v. Thur**, 906 A.2d 552, 570 (Pa Super. 2006), *appeal denied*, 926 A.2d 687 (Pa. 2008). Indeed, in all other respects, we affirm the judgment of sentence.

Judgment of sentence vacated in part, and affirmed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/19

---

[17] Johnson was sentenced to a term of 10 years' probation for his conviction of criminal conspiracy. That sentence, however, ran concurrently with another term of 10 years' probation for his kidnapping conviction.